MELINDA FARMER,

        Plaintiff,

vs.                                                  **Case No. 8:08-cv-00239-JDW-EAJ**

BISK EDUCATION, INC. and
UNIVERSITY ALLIANCE
MARKETING GROUP, INC.,

        Defendants.
_____/

## ORDER

**BEFORE THE COURT** is the Defendants' Motion for Summary Judgment (Dkt. 24) and

Plaintiff's response (Dkt. 34). Upon consideration, the motion (Dkt. 24) is **GRANTED.**

### *Introduction*

This case involves a long-term, valued employee (Farmer) who was terminated

approximately thirty minutes after she requested leave under the Family Medical Leave Act

("FMLA"). Notwithstanding the close temporal proximity between her termination and her request

for FMLA leave, the undisputed facts establish that the corporate decision-makers who terminated

Farmer did not know that she had requested FMLA leave when they terminated her and that they had

made the decision to terminate her months before. As a result, Plaintiff has not established a causal

connection between her termination and request for leave.

### *Background*

Bisk Education, Inc. is a company that facilitates continuing education programs for working

1

professionals, including online degree and certificate programs. (Titen Aff. ¶¶ 3, 4). Bisk Education hired Farmer as a sales representative in 1999. She later held management positions in Bisk Education's call center operations.

In 2005, Farmer was promoted to the Director of Corporate Sales for University Alliance Marketing Group, Inc. ("UAMG"), a separately-incorporated division of Bisk Education that focused on marketing online degree and certificate programs directly to corporate education departments. (Titen Aff. ¶¶ 6-7). As Director of Corporate Sales, Farmer supervised three general National Account Managers ("NAMs"), three industry-specific NAMs, and three Armed Forces Account Managers. (Stobaugh Aff. ¶¶ 8-11). In addition to the employees who reported to Farmer, UAMG had a separate Corporate Education Specialist/Tradeshow Division consisting of two Corporate Education Specialists ("CES") and two Military Education Specialists, which the CES/Tradeshow Manager, Lisa Lambert, supervised. (Stobaugh Aff. ¶¶ 6-7).

The Director of Corporate Sales position required Farmer to travel extensively. (Marruiller Dep. 43:15-45:3). Farmer spent as much as fifty percent of her time away from the office. (Marruiller Dep. 44:21-45:3). But she was willing to travel to get the job done. (Stobaugh Dep. 32:7-9).

In July 2006, Blair Stobaugh, the Vice President of New Business and Corporate Sales, assumed oversight of UAMG's operations. Farmer reported directly to Stobaugh until her termination. (Stobaugh Aff. ¶ 6). Stobaugh determined that Farmer had verbal and written skills below the standard for her position as Director of Corporate Sales. (Stobaugh Aff. ¶ 13; Stobaugh Dep. 35:15-36:5). Farmer completed a writing course at his request, and she was expected to

complete further course work to improve her writing and verbal skills. (Stobaugh Aff. ¶ 13).

Farmer's former supervisor, Adrian Marruiller, had also required her to complete a writing course.

(Marruiller Dep. 67:2-15).

In addition to supervising UAMG, Stobaugh was tasked with evaluating whether UAMG's

continued existence was financially beneficial to Bisk Education. (Stobaugh Aff. ¶ 5). On June 13,

2007, Stobaugh prepared a memorandum of discussion points, recommending that two non-local

general NAMs be terminated and replaced by two local employees. (Stobaugh Aff. Ex. 1). The

memorandum listed Farmer as part of the current NAM team. (Stobaugh Aff. Ex. 1). Later that day,

Stobaugh participated in a meeting with Bisk Education's Chief Executive Officer, Nathan Bisk, and

its President and Chief Operating Officer, Andrew B. Titen. (Stobaugh Aff. ¶¶ 16-17). At the

meeting, Bisk and Titen determined that all three general NAM positions would be eliminated and

no replacements would be hired. (Stobaugh Aff. ¶ 17). On June 15, 2007, UAMG's three general

NAMs, who were under Farmer's supervision, were terminated. (Stobaugh Aff. ¶ 18).

With the termination of the general NAMs, Bisk, Titen, and Stobaugh decided to streamline

UAMG's management structure and eliminate either the CES/Tradeshow Manager position or the

Director of Corporate Sales position. (Stobaugh Aff. ¶ 20). Considering the company's direction

and needs, Stobaugh and Bisk believed that Lambert was better suited to the tasks envisioned for the

position. (Stobaugh Aff. ¶ 25; Stobaugh Dep. 42:4-14). In conversations on June 15 and 16,

Stobaugh, Bisk, and Titen decided to terminate Farmer. (Stobaugh Aff. ¶ 20). However, they left

the actual date of Farmer's termination to Stobaugh's discretion, because he was involved in

UAMG's day-to-day operations and could assess the effectiveness of the company's efforts to

reassign corporate accounts after the termination of the three general NAMs. (Titen Aff. ¶ 13).

Stobaugh decided not to terminate Farmer immediately, in order to adjust workflow and maintain

continuity in the company's relationships with clients that had been serviced by the general NAMs.

(Stobaugh Aff. ¶¶ 19-20). Stobaugh also intended to be on vacation for two and a half weeks in July.

(Stobaugh Aff. ¶ 22).

To protect the business, Bisk Education and UAMG did not inform Farmer that she was

going to be terminated at a future date. (Stobaugh Dep. 108:23-109:13; Titen Dep. 84:18-85:13).

Stobaugh believed it was "not good business practice," because she might cease calling the

company's major clients. (Stobaugh Dep. 59:3-8). On June 15, after the termination of the general

NAMs, Titen sent an email to Bisk informing him that Stobaugh had explained to Farmer that "her

job was not in jeopardy." (Dkt. 43-5, Pl.'s Notice of Filing, Ex. E). According to Titen, "from a

business perspective, it was the right way to handle it." (Titen Dep. 83:17-85:25).

In late June, Bisk Education decided to grant a stock option bonus to all employees with the

title of "director." (Titen Aff. ¶ 11). As Director of Corporate Sales, Farmer held a director title.

(Titen Aff. ¶ 12). However, she was excluded from a July 3 list of the stock option bonuses, because

her position was slated for termination. (Titen Aff. ¶ 12).

In mid-June, Farmer's doctor diagnosed her with a serious medical condition and

recommended that she undergo two surgical procedures. (Reichman Dep. 11:25-17:19). The surgery

would require a minimum of four to six weeks for recovery, during which time Farmer would not

be able to work or travel. (Reichman Dep. 22:5-22). A month later, Farmer decided to have the

surgery, which she scheduled for the end of August. (Reichman Dep. 18:13-19:24).

Farmer did not inform her employers of the medical condition or surgery until July 23, 2007, when she sent an email to Stobaugh, requesting leave from August 29 through September 12. (Stobaugh Aff. ¶¶ 22-23). Farmer specifically asked to use CPP (personal) days and vacation time. (Stobaugh Aff. Ex. 2; Winford Dep. 35:13-19). Stobaugh approved the request. (Stobaugh Aff. Ex. 2). However, he never inquired and was never informed whether the surgery would affect her ability to work or travel. (Stobaugh Dep. 82:11-83:1). Bisk Education's Manager of Compensation and Benefits, Allen Winford, provided Farmer with a blank FMLA certification form for her doctor to complete. (Winford Dep. Ex. 19). In a July 24 email to Stobaugh and Winford, Farmer declined leave under the FMLA, expressly stating she was "not planning on using FMLA." (Kenney Dep. Ex. 1). On August 3, however, Farmer asked Winford for additional information on FMLA leave. (Winford Dep. Ex. 18).

The same day, Stobaugh prepared a memorandum summarizing the UAMG restructuring and proposing August 7 for Farmer's termination. (Stobaugh Aff. Ex. 3). The memorandum outlined the reasoning underlying the earlier decision to select Lambert to assume managerial responsibility of the restructured UAMG instead of Farmer, noting among other things, "performance related concerns with Melinda regarding communications issues." (Stobaugh Aff. Ex. 3).

At 4:30 p.m. on August 7, Farmer sent an email to Winford and Stobaugh, stating that her doctor would be faxing the completed FMLA certification form. (Winford Dep. Ex. 19). At the time, Stobaugh was in a meeting in Kenney's office, finalizing preparations to terminate Farmer, and he did not receive the email. (Stobaugh Aff. ¶ 27). At 5:00 p.m., Stobaugh and Kenney met with Farmer and informed her that she was being terminated because her position had been eliminated.

5

Melinda Farmer filed this action, alleging she was terminated in violation of the FMLA, 29 U.S.C. § 2601, *et. seq.* Bisk Education and UAMG moved for summary judgment, arguing that downsizing and restructuring resulted in the elimination of Farmer's position, and the decision to terminate her was made prior to her request for leave.

### *Standard*

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. Once the movant demonstrates the absence of a genuine issue of material fact, the nonmoving party cannot rest on the pleadings but must designate specific facts through the use of affidavits, depositions, answers to interrogatories and admissions on file to show that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24, 106 S. Ct. at 2553.

The Court will not weigh the evidence or make findings of fact. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court must view all facts that are genuinely disputed, and draw all inferences that are reasonably supported by the record, in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380, 381 n.8, 127 S. Ct. 1769, 1776 & n.8 (2007). The Court's role, then, is limited to "deciding whether there is sufficient evidence

upon which a reasonable juror could find for the non-moving party." *Morrison*, 323 F.3d at 924

(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986)).

## *Discussion*

The FMLA grants eligible employees the substantive right to "a total of 12 workweeks of

leave during any 12-month period . . . [b]ecause of a serious health condition that makes the

employee unable to perform the functions of the position of such employee." 29 U.S.C. §

2612(a)(1). Employees may bring two types of claims under the FMLA: retaliation claims, based

on discrimination for engaging in an FMLA-protected activity, and interference claims, based on the

denial of substantive FMLA rights. 29 U.S.C. § 2615(a); *Strickland v. Water Works & Sewer Bd.*

*of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001). Farmer alleges that Defendants terminated

her in retaliation for requesting FMLA-protected leave, and in so doing, interfered with her attempt

to take a leave of absence under the FMLA.

*1.    Retaliation Claim*

To establish a retaliation claim, an employee must show intentional discrimination due to the

exercise, or attempted exercise, of an FMLA right. *Martin v. Brevard County Pub. Schs.*, 543 F.3d

1261, 1267 (11th Cir. 2008). Where there is no direct evidence of retaliatory intent, as here, courts

follow the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

(1973). *Id.* at 1268. This requires the employee to show that: "(1) he engaged in statutorily

protected activity, (2) he suffered an adverse employment decision, and (3) the decision was causally

related to the protected activity." *Id.* If the employee establishes a *prima facie* retaliation case, "the

burden shifts to the employer 'to articulate a legitimate reason for the adverse action.'" *Id.* (quoting

*Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006)). If the

employer provides a legitimate reason, the employee then has the burden to show that "the employer's proffered reason was pretextual by presenting evidence 'sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Id.* (quoting *Hurlbert*, 439 F.3d at 1298).

In challenging the first element, Defendants argue that Farmer did not engage in FMLA-protected activity at the time the decision was made to terminate her. The timing of the adverse employment decision, however, is not part of this inquiry, which only addresses whether the employee engaged in an activity protected by the FMLA. Farmer was diagnosed with a serious medical condition that required surgery and several weeks away from work. Farmer informed her employer of the surgery and applied for leave. Although she initially stated that it would not be FMLA leave, she later informed her employers that her doctor would be sending the required FMLA certification form. Farmer has provided sufficient evidence to at least raise a genuine issue of material fact concerning her request for leave under the FMLA.

Bisk Education and UAMG do not contest that Farmer's termination was an adverse employment decision. However, the Defendants will not face the burden of providing a legitimate reason for the termination unless Farmer can raise a genuine issue of material fact concerning the third element, that the decision to terminate her was causally-related to her termination. She cannot.

"To establish the causal connection element, a plaintiff need only show that the protected activity and the adverse action were not wholly unrelated." *Brungart v. BellSouth Telecommc'ns, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (citations and internal quotations omitted). Farmer has not and cannot establish that her election to take FMLA leave and her termination "were not wholly unrelated." The only fact that Farmer can point to in attempting to show that her termination was

in any way connected with her request for FMLA leave is the timing between that request and her termination. The undisputed facts are that Farmer was terminated within two weeks of her initial request for medical, albeit non-FMLA, leave and within thirty minutes of her email stating that the FMLA certification form would be provided. "The general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Id.* However, two exceptions preclude the close temporal proximity in this case from satisfying the causation element.

First, "in a retaliation case, when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation." *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006). The undisputed evidence in this case shows the Defendants contemplated and made the decision to terminate Farmer in mid-June, nearly six weeks before her request for non-FMLA medical leave and nearly two months before her email expressing the intent to use FMLA-protected leave.

Farmer argues that summary judgment is not proper because Titen sent an email to Bisk on June 15, stating that Stobaugh informed her that her job was not in jeopardy, and she remained employed for approximately two months, during which time Stobaugh approved her request for leave. These arguments do not raise genuine issues of material fact. The unrefuted testimony showed that Defendants decided to terminate Farmer, but that Stobaugh made a business decision to keep her employed temporarily in order to maintain continuity with existing clients and to accommodate his vacation schedule. Under the circumstances, Stobaugh believed it was the

appropriate business decision not to inform her that she would be terminated at a later date. Significantly, the email that Farmer points to simply states that Stobaugh informed Farmer that her job was not in jeopardy. It does not show that she was not actually at risk of being terminated at a later date.

Second, temporal proximity is insufficient to establish causation in this case because "there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged [or was attempting to engage] in protected conduct." *Brungart,* 231 F.3d at 799. "A decision maker cannot have been motivated to retaliate by something unknown to him." *Id.* Because this case involves a corporate defendant, "the plaintiff must show that the corporate agent who took the adverse action was aware of the plaintiff's protected expression." *Id.* (quoting *Raney v. Vinson Guard Serv., Inc.,* 120 F.3d 1192, 1197 (11th Cir.1997)). In other words, "the plaintiff must generally show that the <u>decision maker</u> was aware of the protected conduct <u>at the time of the adverse employment action</u>." *Id.* (emphasis added).

Plaintiff argues that "Bisk cannot debate that Ms. Farmer advised Bisk of her need for a medical absence and advised Bisk of her intent to take FMLA leave before she was terminated – indeed, Bisk told her (via Winford) that she should take FMLA leave." (Dkt. 34, Pl.'s Opp. at 10). However, the undisputed evidence shows that Winford did not make the decision to terminate her and did not carry that decision. Stobaugh, Bisk, and Titen made the decision, and Stobaugh and Kenney carried it out. Not only were these corporate decision-makers unaware of Farmer's intent to take leave under the FMLA when they decided to terminate her in mid-June, the undisputed evidence shows that when they carried out the decision on August 7, they did not know that she had requested FMLA leave.

10

Farmer's July 24 email to Stobaugh and Winford specifically stated that she did not intend to take leave under the FMLA. Although Farmer requested additional information from Winford on August 3, there is no evidence that Stobaugh and Kenney were aware of this request. On August 7, the day of her termination, Farmer sent an email to Winford and Stobaugh at 4:30 p.m., indicating her intent that her requested leave be covered by the FMLA. However, there is no evidence that Kenney received or was aware of the email, and Stobaugh's unrefuted testimony was that he did not receive the email until after Farmer had been terminated. Without any evidence that the corporate decision-makers were aware of her request for FMLA leave, Farmer cannot establish the necessary causation, notwithstanding its close temporal proximity to her termination.

Farmer has failed to show a causal connection between her termination and request for FMLA-protected leave. Accordingly, she has not established a *prima facie* case of retaliation under the FMLA. Although Plaintiff argues that her employers' proffered reasons for the termination were pretextual, this is immaterial because the burden has not shifted to Defendants to articulate a legitimate reason for terminating her.[1] *See Martin*, 543 F.3d at 1268. Defendants are entitled to summary judgment on Farmer's retaliation claim.

2.    *Interference Claim*

Farmer alleges that she had a substantive right under the FMLA to take a medical leave of absence, and her employer interfered with that right by terminating her. To establish an interference claim, Farmer must demonstrate that her employer denied her a benefit to which she was entitled

---

[1] To the extent Plaintiff makes a mixed motive argument, it is likewise immaterial. *See* Dkt. 34, Pl.'s Opp. at 13 ("And should the Court still believe that the proffered business reason is legitimate, Ms. Farmer then submits that even if true it is but one reason for Bisk's conduct, another of which was discrimination against Ms. Farmer for asserting her need for FMLA leave."). Because Farmer cannot establish the causation element of a *prima facie* retaliation case, Defendants' proffered reasons for terminating her are not at issue.

under the FMLA. *Martin*, 543 F.3d at 1266-67. She does not need to show that the "employer intended to deny the right; the employer's motives are irrelevant." *Id.* at 1267 (quoting *Strickland*, 239 F.3d at 1208).

Although this case involves termination prior to FMLA leave, case law addressing termination during the course of FMLA leave is instructive. An employer will not be liable for terminating an employee while on FMLA leave "if it can demonstrate that it would have discharged the employee had he not been on FMLA leave." *Id.* at 1267 (quoting *Strickland*, 239 F.3d at 1208). In such a case, the employer must show that "it refused to reinstate the employee for a reason wholly unrelated to the FMLA leave." *Strickland*, 239 F.3d at 1208. For example, an employee slated for termination as part of a reduction in force cannot establish an interference claim even if the termination occurs during FMLA leave. *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1354-55 (11th Cir. 2000); *see also* 29 C.F.R. § 825.216(a) ("An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period."). It follows that an employer who terminates an employee prior to the commencement of FMLA leave will not be liable for interfering with the employee's substantive FMLA rights if the employer can demonstrate that the termination was "for a reason wholly unrelated to the FMLA leave." *See Strickland*, 239 F.3d at 1208; *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960-61 (10th Cir. 2002) ("[A]n employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request.") (quotation omitted).

Bisk Education and UAMG have demonstrated that their reason for terminating Farmer was

"wholly unrelated" to her request for FMLA leave. In mid-June 2007, Defendants restructured UAMG and decided to consolidate its management and eliminate Farmer's position. Lambert was chosen for the new UAMG management position because the employers believed her better suited for the role. The decision to eliminate Farmer's position was made prior to her request for leave, further indicating that her termination was "wholly unrelated." Farmer's request for FMLA leave cannot prevent her employers from terminating her for reasons unrelated to the request. *See Smith*, 298 F.3d at 960-61. Farmer has not established that Defendants interfered with any rights guaranteed under the FMLA.

### *Conclusion*

Accordingly, it is **ORDERED AND ADJUDGED** that Defendants' Motion for Final Summary Judgment (Dkt. 24) is **GRANTED**. The Clerk of the Court is directed to enter judgment in favor of the Defendants and to close this case. All pending motions are denied as moot.

**DONE AND ORDERED** in chambers this 27th day of July, 2009.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

13